The Full Commission reviewed the prior Opinion and Award based on the record before the Deputy Commissioner and briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. The Full Commission reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties as
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant.
3. Plaintiff's average weekly wage was $647.98 and sufficient to yield a maximum compensation rate of $426.00 per week.
4. Plaintiff's medical records were stipulated into evidence. These records consisted of the following: one-hundred fifteen pages of documentation from Dr. Koman; four pages of documentation from Dr. Uhlin; five pages of documentation from Dr. Erdin; twenty-seven pages of documentation from High Point Regional Hospital; sixty-six pages of documentation from George Highsmith; eighty-nine pages of documentation from Community General Hospital; eleven pages of documentation from Dr. Phillips; and seven pages from High Point Regional Hospital.
5. Plaintiff filed notice with his brief that he was withdrawing his claim for hearing loss asserted under G.S. §97-53(28).
6. The issues before the Deputy Commissioner were: (i) whether plaintiff contracted an occupational disease while employed by defendant/employer; and (ii) if so, what compensation, if any is due plaintiff.
 POST-HEARING DEPOSITIONS
The depositions of the following were received into evidence: Robert A. Erdin, Jr., M.D.; Denise Ingram; Louis Andrew Koman, M.D.; Kenneth S. O'Rourke, M.D.; Michael J. Phillips, M.D.; Christopher L. Reinhardt; Stephen Richard Uhlin, M.D.; Stephen James Vaughan; and Lester E. Watts, M.D.
 RULINGS ON POST-HEARING MOTIONS
Following the evidentiary hearing, the Deputy Commissioner allowed the parties ninety days to depose the medical experts. After the close of the evidence, the Deputy Commissioner allowed plaintiff's motion to reopen the evidence to take additional testimony from Dr. Koman. The Deputy Commissioner denied defendant's motion to receive into evidence a surveillance videotape not offered at the initial evidentiary hearing. These Orders by the Deputy Commissioner were proper and are hereby affirmed.
 ***********
Based on the competent evidence, the undersigned makes the following additional
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-one years old and had completed the sixth grade. He served in the military where he attempted to complete his GED but failed to do so.
2. Plaintiff began working at Gray Concrete in approximately 1965 and continued his employment with that company until 1985, when defendant bought the company. Plaintiff continued to work for defendant until 13 December 1992. Plaintiff is right hand dominant.
3. While employed with defendant from 1985 though 1992, plaintiff was a "working foreman." His job involved little paperwork and mostly manual labor, including driving a forklift, welding, patching concrete pipe, operating a jackhammer weighing 60 to 90 pounds, operating cement mixers, and operating a front end loader. From 1985 to 1986, plaintiff from time to time operated a "CVR" machine which required the operator to hold tightly to a one-inch pipe while the machine vibrated, thus exposing plaintiff's hand to vibration.
4. Plaintiff was often exposed to temperatures colder than the prevailing outside temperature because of the wind effect in the buildings where he worked. He also often worked in unheated areas of the plant and was exposed to colder temperatures during the winter months.
5. Plaintiff began to suffer pain and numbness in his hand in the 1980's, particularly during the winter months. He continued to work until 13 December 1992, when he left his job because of increased pain and numbness in his hands, and to a lesser extent his feet, and began receiving short-term disability benefits.
6. In January 1993, plaintiff reported to the plant clerk, Denise Ingram, that he believed that his physical disability was related to his job with defendant.
7. Plaintiff has a highly unusual condition and presents a complicated medical picture. He has vascular atherosclerosis, a form of vascular occlusive disease (also called "vaso-occlusive disease"), which plaintiff's physicians have also labeled Buerger's disease, or atypical Buerger's disease. Buerger's disease is characterized by bilateral arterial insufficiency in the extremities and is associated with young to middle-aged males with a history of heavy cigarette smoking. Plaintiff smoked at least a pack of cigarettes a day for the past twenty-five years.
8. Plaintiff's arterial insufficiency is primarily in his hands, particularly his fingers. The arterial insufficiency in plaintiff's fingers causes ischemic pain, or pain resulting from restricted blood flow. Ulcerations on his fingers become infected and often do not heal, resulting in amputation. Amputation may also be necessary to alleviate pain.
9. Plaintiff also suffers from Raynaud's phenomena secondary to his vaso-occlusive disease. Raynaud's phenomena is characterized by color changes of the fingers and toes and pain when exposed to cold temperatures.
10. In December 1992, Stephen Uhlin, M.D., a dermatologist, examined plaintiff for complaints of cracking and blistering of his fingertips, and numbness and coldness in his hands. Dr. Uhlin suspected schleroderma, a disease of the blood vessels and the collagen in the skin, characterized by decreased blood flow and thickening and hardening of the fingertips. He suspected a vascular origin to a lesser extent. Dr. Uhlin treated plaintiff for ulcerations on two of his fingers on the left hand. According to Dr. Uhlin, heavy industrial work (for example, operating a jackhammer) can cause a schlerodermoid reaction, and jackhammer operators are at an increased risk for schleroderma. However, plaintiff did not return for additional testing, and Dr. Uhlin was unable to identify a cause for plaintiff's skin condition. Plaintiff has vaso-occlusive disease or Buerger's disease, not schleroderma.
11. On 13 January 1993, plaintiff presented to L. Andrew Koman, M.D., who practices orthopaedic surgery, including hand surgery, at Bowman Gray School of Medicine. Plaintiff's symptoms were arterio insufficiency in his hands, with cold, numbness, and pain. He had an ulceration on the tip of the little finger of his left hand. Dr. Koman diagnosed plaintiff as having vaso-occlusive disease (which Dr. Koman later called Buerger's disease), primarily in his hands, related originally to a spasming of the blood vessels, but then related to the blood vessels becoming occluded or "clotting off."
12. Plaintiff's preexisting vascular condition and his Buerger's disease predisposed plaintiff to developing occluded blood vessels as a result of trauma. Plaintiff's condition is post-traumatic in nature and developed over a prolonged period of years of exposure to trauma, both micro and macro trauma. Using jackhammers, exposure to cold weather, and hitting one's hands are forms of trauma. While "life is trauma," as Dr. Koman stated, plaintiff's hands were in fact exposed to trauma while employed by defendant.
13. Dr. Koman stated, based on a reasonable medical certainty, that plaintiff's job with defendant significantly contributed to the development of his vaso-occlusive disease. The Commission finds that plaintiff's occupational trauma to his hands over the course of many years was a significant causal factor in the development of his vaso-occlusive disease.
14. Plaintiff probably would have developed vaso-occlusive disease with a lower level of trauma than would be required for the average person. Many jobs involve some level of "trauma" to the hands. Expert testimony is necessary to determine whether the trauma to plaintiff's hands during his employment with defendant put plaintiff at an increased risk of developing his occlusive disease as compared to members of the general public with this preexisting vascular condition or predisposition but not so employed.
15. No medical expert has offered an opinion that, because of his employment (i.e., the occupational trauma), plaintiff was at an increased risk of developing vaso-occlusive disease, or Buerger's disease, as compared to members of the general public with the same predisposition but not so employed.
16. Dr. Koman testified that workers who use their hands in their occupations as hammers (e.g., airline counter employees) or to protect themselves (e.g., baseball players) are more likely than the general population to have occlusive disease. There is no evidence that plaintiff used his hands to that effect.
17. Dr. Koman testified that plaintiff's job with defendant exposed him to trauma that was different from working at a desk job, but this testimony is insufficient to show that the hazards of the plaintiff's employment with defendant distinguished the employment in character from the general run of occupations.
18. Plaintiff was examined by Kenneth S. O'Rourke, a rheumatologist at Bowman Gray School of Medicine, at Dr. Koman's request. Dr. O'Rourke testified that plaintiff's employment placed him at an increased risk of developing his disease. The context of his testimony clearly shows that Dr. O'Rourke was of the opinion that, because of plaintiff's predisposition, the employment could have been a causative factor in the disease's development. Dr. O'Rourke did not offer an opinion that plaintiff was at an increased risk as compared to the general public not so employed, with the same predisposition or otherwise.
19. Dr. Koman continued to treat plaintiff through at least March 1997. He operated on plaintiff's left hand twice, removing portions of his fingers. Plaintiff continued to suffer significant pain, cold intolerance, and numbness, and he continued to deteriorate. Dr. Koman anticipated further surgery would eventually be required.
20. Plaintiff has reached maximum medical improvement and has a permanent partial disability rating of fifty percent to his left hand and twenty percent to his right hand.
 ***********
Based on the findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. Plaintiff has proven, by the greater weight of the evidence, that his vascular occlusive disease or Buerger's disease was caused or substantially aggravated by conditions of his employment with defendant. G.S. § 97-53(13).
2. Plaintiff has not proven, by the greater weight of the evidence, that his disease developed due to causes and conditions which are characteristic of and peculiar to his employment with defendant, but excluding all ordinary diseases of life to which the general public with a similar vascular predisposition is equally exposed outside of the employment. G.S. § 97-53(13);Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979). Specifically, plaintiff has failed to prove that his employment placed him at an increased risk of developing his disease as compared to members of the general public or to members of the general public with the same vascular predisposition. Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Plaintiff's claim is denied.
2. Each party shall bear their own costs.
 S/ ____________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ __________________ LAURA K. MAVRETIC COMMISSIONER